**LOEB & LOEB LLP**
Bernard R. Given II
State Bar No. 07990180
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4120
Tel: 310-282-2000
Fax: 310-282-2200
Email: bgiven@loeb.com

*Proposed Counsel to the Debtor*
*and Debtor-in-Possession*

**FORSHEY PROSTOK, LLP**
Jeff Prostok
State Bar No. 16352500
Lynda Lankford
State Bar No. 11935020
777 Main Street, Suite 1290
Fort Worth, TX 76012
Tel: 817-877-8855
Fax: 817-877-4151
Email: jprostok@forsheyprostok.com
        llankford@forsheyprostok.com

*Proposed Counsel to the Debtor*
*and Debtor-in-Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| EVENTIDE CREDIT ACQUISITIONS, LLC, | § § § | Case No. 20-40349-11 |
| Debtor. | § § § | |

| | | |
|---|---|---|
| EVENTIDE CREDIT ACQUISITIONS, LLC, | § § | Adv. Proc. No. 20-_____ |
| Plaintiff, | § § | |
| v. | § § | |
| BIG PICTURE LOANS, LLC, ASCENSION TECHNOLOGIES, LLC, RENEE GALLOWAY, LULA WILLIAMS, GLORIA TURNAGE, DOWIN COFFY, MARCELLA SINGH as administrator of the Estate of FELIX GILLISON JR., CHRISTINA CUMMING, LAMESHA KONDO, ANDREA MENDEZ, TAMMY WANGELINE, KIMBERLY POOL, TASHA PETTIFORD, RICHARD L. SMITH, JR., VICTORIA RENEE MCKOY, DESIREE WRIGHT LOVINS, CARRIE SAMANTHA SMITH, CHRIS KOBIN, DANA DUGGAN, JOHN ACTIS II, DOMINIQUE DE LA BAY, LORI FITZGERALD, ANDREA | § § § § § § § § § § § § § § § § § § | |

SCARBOROUGH, DIANNE TURNER, EARL          §
BROWNE, ROSE MARIE BUCHERT, REGINA        §
NOLTE, KEVIN MINOR, TERESA TITUS,         §
BURRY POUGH, LISA MARTINEZ, SONJI         §
GRANDY, ANASTASIA SHERMAN, JERRY          §
AVENT, LUCINDA GRAY, ANTHONY GREEN,       §
LINDA MADISON, DEREK GETER, GEORGE        §
HENGLE, KEISHA HAMM, FAITH THOMAS,        §
SHARON PAAVO, AND LATANYA                 §
TARLETON,                                 §
                                          §
                    Defendants.           §

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# <u>TABLE OF CONTENTS</u>

**Page**

NATURE OF THE ACTION ..................................................................................................1

JURISDICTION AND VENUE ............................................................................................3

THE PARTIES.........................................................................................................................4

FACTUAL BACKGROUND ................................................................................................8

      A.     Historical Context. ....................................................................................8

      B.     The Pending Actions.................................................................................11

      C.     The Debtor's Indemnification Obligations. .........................................12

      E.     The Proposed Settlement and Violations of the LSA. .........................15

      E.     If the Automatic Stay Is Not Extended, the Debtor and Its Estate Will
           Be Irreparably Harmed. ...........................................................................19

      F.     The Remaining Elements for an Injunction are Readily Satisfied........20

FIRST CLAIM FOR RELIEF (Section 362 – Declaratory Judgment) .........................22

SECOND CLAIM FOR RELIEF (Section 105 – Injunctive Relief)............................23

PRAYER FOR RELIEF .......................................................................................................25

COMES NOW Plaintiff Eventide Credit Acquisitions, LLC (the "**Debtor**" or "**Plaintiff**"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, and as plaintiff in the above-captioned adversary proceeding, and hereby alleges for its *Complaint for Declaratory and Injunctive Relief* (the "**Complaint**"),[1] upon knowledge of its own acts and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is an Adversary Proceeding brought pursuant to Rules 7001(7), 7001(9) and 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and section 105 of title 11 of the United States Code (the "**Bankruptcy Code**") seeking entry of an order: (i) extending the automatic stay under section 362 of the Bankruptcy Code to the Debtor's members, officers, former manager and Covered Persons (defined below) relating to its former manager that are named defendants in several purported class action lawsuits (the "**Indemnified Defendants**") pending in federal courts around the country, which were filed prepetition by certain of the above-captioned defendants (the "**Purported Class Representatives**") with the exception of Big Picture Loans, LLC ("**Big Picture**") and Ascension Technologies, LLC ("**Ascension**" and with Big Picture, the "**Tribal Defendants**"), and/or (iii) enjoining and prohibiting the Purported Class Representatives from the commencement or continued prosecution of their judicial proceedings against the Debtor or the Indemnified Defendants, under section 105(a) of the Bankruptcy Code until the effective date of a Chapter 11 plan.

2. As set forth in the chart attached hereto as **Exhibit 1**, the Debtor, and in some instances, only certain of the Indemnified Defendants, have been named as defendants in seven

---

[1] The claims asserted in this Complaint are subject in all respects to the Debtor's forthcoming motions to transfer venue of the Pending Actions to this Court where they can be efficiently litigated in one forum.

lawsuits currently pending before federal district courts in the District of Massachusetts, in the Eastern District of Virginia, and in the District of Oregon, including the following (the "**Pending Actions**"):

    a.   *Williams et al. v. Big Picture Loans, LLC et al.*, No. 3:17-cv-461 (E.D. Va.) ("***Williams I***");

    b.   *Galloway et al. v. Big Picture Loans, LLC et al.*, No. 3:18-cv-406 (E.D. Va.) ("***Galloway I***");

    c.   *Smith et al. v. Martorello et al.*, No. 3:18-cv-01651-AC (D. Oreg.) ("***Smith***");

    d.   *Duggan et al. v. Martorello et al.*, No. 1:18-cv-12277-JGD (D. Mass.) ("***Duggan***");

    e.   *Williams et al. v. Microbilt et al.*, No. 3:19-cv-85 (E.D. Va.) ("***Williams II***");

    f.   *Galloway et al. v. Martorello et al.*, No. 3:19-cv-00314-REP (E.D. Va.) ("***Galloway II***"); and

    g.   *Galloway et al. v. Williams et al.*, No. 3:19-cv-470 (E.D. Va.) ("***Galloway III***").

    3.    The Debtor is a direct party to *Duggan*, *Smith* and *Galloway II*. By virtue of the Debtor's bankruptcy filing, those actions are, with respect to the Debtor, subject to the automatic stay imposed by section 362 of the Bankruptcy Code. However, certain Indemnified Defendants were also named as defendants in *Duggan*, *Smith*, and *Galloway II*. In addition, while the Debtor is not named a defendant in *Williams I*, *Galloway I*, *Galloway III*, or *Williams II*, certain Indemnified Defendants are named. Under the Debtor's Operating Agreement,[2] the Debtor is obligated to indemnify the Indemnified Defendants. This means that, regardless of whether the Debtor is actually named as a defendant, the Debtor will have to actively participate in the Pending Actions to protect its own interests. Thus, allowing the cases to proceed against the Indemnified

---

[2]    Terms used herein and not immediately defined have the meanings given to them elsewhere in this Complaint.

Defendants would be tantamount to allowing an action against the Debtor itself.

4.      Separately, in *Galloway III*, certain defendants, including the Tribal Defendants, have proposed a Settlement Agreement (defined below) with the Purported Class Representatives that (1) would be funded using the Debtor's collateral, (2) would compromise the Debtors' contracts rights and severely deplete the property of the estate, and (3) could result in substantial indemnification claims against the Debtor by certain of its members that are parties to the Settlement Agreement.  This is despite the fact that the Debtor itself is not a party to the Settlement Agreement and will not benefit from it in any way.

5.      It is well settled that bankruptcy courts have the power to enjoin suits against non-debtor third parties, either by extending the automatic stay of section 362 or by exercising their authority under section 105(a) of the Bankruptcy Code. *See Reliant Energy Services, Inc. v. Enron Canada Corp*., 349 F.3d 816, 825-26 (5th Cir. 2003); *S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (In re S.I. Acquisition, Inc.),* 817 F.2d 1142, 1147-48 (5th Cir. 1987). And courts consistently have enjoined such actions where there is either a strong identity of interest between the debtor and the non-debtor third parties or where the prosecution of the suit against the non-debtor third parties would hinder the debtor's reorganization efforts. Here, ***both*** circumstances are present. Accordingly, the Debtor respectfully requests that this Court issue a declaratory judgment staying the Pending Actions against the Indemnified Defendants pursuant to section 362 of the Bankruptcy Code.  Alternatively, the Debtor respectfully requests that the Court enjoin the Pending Actions pursuant to Section 105(a) of the Bankruptcy Code.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b).

6.      Venue in this district is proper under 28 U.S.C. § 1409.

7.     The statutory predicates for the relief requested herein are sections 362(a)(1), (a)(3), and (a)(6) and 105(a) of the Bankruptcy Code as well as Bankruptcy Rules 7001(7), 7001(9), and 7065.

## **THE PARTIES**

8.     Plaintiff Eventide Credit Acquisitions, LLC is a Delaware limited liability company with its principal place of business in Texas.

9.     Defendant Big Picture Loans is a limited liability company organized under the laws of The Lac Vieux Desert Bank of Lake Superior Chippewa Indians ("**LVD**") with its principal place of business on LVD's reservation in the Upper Peninsula of Michigan.

10.     Defendant Ascension ("**Ascension**") is a limited liability company organized under the laws of the LVD with its principal place of business on LVD's reservation in the Upper Peninsula of Michigan.

11.     Defendant Lula Williams is a natural person who resides in Virginia. Williams is a plaintiff in *Williams I*, *Williams II*, and *Galloway III*.

12.     Defendant Gloria Turnage is a natural person who resides in Virginia. Turnage is a plaintiff in *Williams I*, *Williams II* and *Galloway III*.

13.     Defendant George Hengle is a natural person who resides in Virginia. Hengle is a plaintiff in *Williams I*, *Williams II* and *Galloway III*.

14.     Defendant Dowin Coffy is a natural person who resides in Virginia. Coffy is a plaintiff in *Williams I*, *Williams II* and *Galloway III*.

15.     Defendant Marcella Singh, as administrator of the Estate of Felix Gillison, Jr., is a natural person who resides in Virginia. Gillison was a named plaintiff in *Williams I*. Singh, as administrator of the Estate of Felix Gillison, Jr., is a named plaintiff in *Galloway III*.

16.     Defendant Renee Galloway is a natural person who resides in Virginia.   Galloway is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

17.     Defendant Dianne Turner is a natural person who resides in Virginia.  Turner is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

18.     Defendant Earl Browne is a natural person who resides in California.  Browne is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

19.     Defendant Rose Marie Buchert is a natural person who resides in Illinois.  Buchert is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

20.     Defendant Regina Nolte is a natural person who resides in Indiana.  Nolte is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

21.     Defendant Kevin Minor is a natural person who resides in Ohio.  Minor is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

22.     Defendant Teresa Titus is a natural person who resides in Washington.  Titus is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

23.     Defendant Burry Pough is a natural person who resides in Texas.  Pough is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

24.     Defendant Lisa Martinez is a natural person who resides in Texas.  Martinez is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

25.     Defendant Sonji Grandy is a natural person who resides in New Jersey.  Grandy is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

26.     Defendant Anastasia Sherman is a natural person who resides in Florida.  Sherman is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

27.     Defendant Jerry Avent is a natural person who resides in North Carolina.  Avent is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

28.     Defendant Lucinda Gray is a natural person who resides in North Carolina.  Gray is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

29.     Defendant Anthony Green is a natural person who resides in Illinois.  Green is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

30.     Defendant Linda Madison is a natural person who resides in Maryland.  Madison is a plaintiff in *Galloway I*, *Galloway II*, and *Galloway III*.

31.     Defendant Richard L. Smith, Jr. is a natural person who resides in Oregon.  Smith is a plaintiff in *Smith* and *Galloway III*.

32.     Defendant Dana Duggan is a natural person who resides in Massachusetts.  Duggan is a plaintiff in *Duggan* and *Galloway III*.

33.     Defendant Dominque de la Bay is a natural person who previously resided in Virginia and is a plaintiff in *Galloway II* and *Galloway III*.

34.     Defendant Lori Fitzgerald is a natural person who resides in Virginia.  Fitzgerald is a Plaintiff in *Galloway II* and *Galloway III*.

35.     Defendant Andrea Scarborough is a natural person who resides in Virginia.  Scarborough is a Plaintiff in *Galloway II* and *Galloway III*.

36.     Defendant Derek Geter is a natural person who resides in Virginia.  Geter is a plaintiff in *Galloway II* and *Galloway III*.

37.     Defendant Keisha Hamm is a natural person who resides in Georgia.  Hamm is a plaintiff in *Galloway II* and *Galloway III*.

38.    Defendant Faith Thomas is a natural person who resides in Georgia.  Thomas is a Plaintiff in *Galloway II* and *Galloway III*..

39.    Defendant Sharon Paavo is a natural person who resides in Michigan.  Paavo is a plaintiff in *Galloway II* and *Galloway III*.

40.    Defendant Latanya Tarleton is a natural person who resides in Michigan.  Tarleton is a plaintiff in *Galloway II* and *Galloway III*.

41.    Defendant Christina Cumming is a natural person who resides in California. Cumming is a plaintiff in *Galloway III*.

42.    Defendant Lamesha Kondo is a natural person who resides in Ohio.  Kondo is a plaintiff in *Galloway* III.

43.    Defendant Andrea Mendez is a natural person who resides in Texas. Mendez is a plaintiff in *Galloway III*.

44.    Defendant Tammy Wangeline is a natural person who resides in Illinois. Wangeline is a plaintiff in *Galloway III*.

45.    Defendant Kimberly Pool is a natural person who resides in Illinois.  Pool is a plaintiff in *Galloway III*.

46.    Defendant Tasha Pettiford is a natural person who resides in Michigan.  Pettiford is a plaintiff in *Galloway III*.

47.    Defendant Victoria Renee McKoy is a natural person who resides in Georgia. McKoy is a plaintiff in *Galloway III*.

48.    Defendant Desiree Wright Lovins is a natural person who resides in Georgia. Lovins is a plaintiff in *Galloway III*.

49.     Defendant Carrie Samantha Smith is a natural person who resides in Georgia. Smith is a plaintiff in *Galloway III*.

50.     Defendant Chris Kobin is a natural person who resides in California. Kobin is a plaintiff in *Galloway III*.

51.     Defendant John Actis II is a natural person who resides in Mississippi. Actis is a plaintiff in *Galloway III*.

52.     Except with respect to the allegations in *Williams II*, the Defendants comprising the Purported Class Representatives purport to be acting on behalf of a class of themselves and those who are similarly situated, although no class has been certified in any of the Pending Actions to date.

## FACTUAL BACKGROUND

### A.     Historical Context.[3]

53.     The Pending Actions stem from the tribal lending operations of LVD. LVD's tribal lending operations are conducted through Tribal Economic Development Holdings, LLC ("**TED**") and the Tribal Defendants, which were each formed under LVD tribal law. Through these lending operations, the LVD provides small dollar short-term loans at high APRs from its reservation, to consumers in need of short-term emergency financial solutions, all pursuant exclusively to LVD's consumer lending laws and federal laws.

54.     Since 2011, LVD has operated online lending businesses offering short-term loan products, as well as other consumer loan products, to consumers nationwide. Each lending entity was wholly-owned, operated and controlled by LVD, and was headquartered on LVD's reservation. All loans are originated on LVD's reservation located in the Upper Peninsula of

---

[3] The United States Court of Appeals recognized many of these facts in its decision in *Williams v. Big Picture Loans, LLC*, 929 F.3d 170 (4th Cir. 2019) (the "**Fourth Circuit's Decision**").

Michigan, where state law is not applicable, and where the loans were also serviced and collected upon. Indeed, at all times, LVD had complete control over the lending entities.

55. In 2012, LVD began offering loans to consumers through a tribal lending entity called Red Rock Tribal Lending, LLC ("**Red Rock**"). LVD also offered consumer loans through a second tribal lending entity, Duck Creek Financial, LLC ("**Duck Creek**"). To assist in the growth of LVD's lending portfolios and to provide necessary services to those portfolios, Red Rock and Duck Creek entered into a servicing agreement with Bellicose VI, Inc. ("**Bellicose**") to obtain vendor services, templated by over a dozen expert tribal lawyers upon a congressionally blessed NIGC management contract. In 2012, Bellicose assigned its rights under its servicing contracts with Red Rock and Duck Creek to its affiliate, SourcePoint VI, LLC ("**SourcePoint**"). The services Red Rock and Duck Creek obtained from Bellicose and SourcePoint included, *inter alia*, compliance management assistance, marketing material development, and the development of risk modeling and data analytics. While these services were vital to LVD's economic development, the termination rights and all decisions were always in the sole and absolute discretion of LVD.

56. After a few years, LVD sought to mature its lending operations by moving in house several vendor services in an effort to reduce costs as well as further enhance economic development opportunities for LVD and members of LVD. Towards that end, LVD sought to acquire its then service provider, SourcePoint, along with its affiliates and parent company, Bellicose Capital, LLC ("**Bellicose Capital**"). LVD determined that such an acquisition would create significant value for LVD because of the valuable processes, good will, existing contractual relationships, and other assets owned by Bellicose Capital and its subsidiaries. After more than three years of discussion, and ultimately motivated by the substantial tax credits to Bellicose

Capital's members, an agreement was eventually reached whereby LVD acquired Bellicose Capital, including SourcePoint.

57. As an overview, the acquisition was generally structured as follows:

(a) LVD formed Big Picture, its new lending entity.

(b) LVD formed Ascension, its new servicing company.

(c) LVD formed TED, as the parent company, which wholly owns both Big Picture and Ascension.

(d) LVD transferred all assets and liabilities from Duck Creek and Red Rock to Ascension and Big Picture.

(e) The Debtor was formed as an entity to sell Bellicose Capital to LVD.

(f) SourcePoint and all of its subsidiary companies merged and consolidated their assets into Bellicose Capital.

(g) TED acquired Bellicose Capital from the Debtor in a seller-financed transaction evidenced by a secured promissory note to the Debtor (the "**Promissory Note**"), a Loan and Security Agreement (the "**LSA**"), and Parental Guarantee and Sovereign Immunity Waiver ("**Guarantee**"). This acquisition was done by Tribal Acquisition Company, LLC, a tribally owned entity that was formed under Delaware law that has since been dissolved.

(h) The Promissory Note from TED to the Debtor was secured by certain collateral as detailed in the note.

(i) Bellicose Capital ceased to exist once it was acquired by TED.

(j) Red Rock and Duck Creek dissolved.

58. In sum, remaining today are the Debtor, a secured creditor in a seller-financed transaction, LVD, and TED, the buyer and parent of Big Picture and Ascension. The acquisition closed on January 26, 2016 and was completed by February 15, 2016.

59. After the acquisition by LVD of the business previously operated by Bellicose Capital and SourcePoint, LVD continued to operate its short term consumer lending business through Big Picture and Ascension.

60. Because of the seller-financed nature of the transaction, LVD (through TED) committed to make contractually required payments to the Debtor for a seven-year period, pursuant to the Promissory Note, after which the remaining debt on the note would be retired and LVD would own the consulting business free and clear of any obligations to its creditor, the Debtor.

61. The payments required to be made to the Debtor are variable and determined based upon a contractual waterfall that was advantageous to LVD's interests, ensuring a fair price would be paid given the sunset at maturity. Because these waterfall payments to the Debtor varied based upon TED's overall profitability, TED agreed that it owes a fiduciary duty to the Debtor to maximize note payments.

62. In addition, the LSA provided the Debtor certain creditor's rights with respect to the collateral in the event of a default, including the ability to commence binding arbitration with the American Arbitration Association ("**AAA**") and to secure a preliminary injunction from the District Court for the Western District of Michigan to maintain the status quo while any such arbitration proceeded.

**B.     The Pending Actions.**

63. In 2017, *Williams I* was filed by certain of the Purported Class Representatives. Then, in 2018, *Duggan*, *Smith* and *Galloway I* were filed. Those actions were followed by

*Galloway II*, *Galloway III* and *Williams II* in 2019.  The plaintiffs and defendants in each of the Pending Actions vary, but, with the exception of *Williams II*, each assert common claims – namely, a choice of law dispute against the lending entity, expounded into, a pejorative "rent-a-tribe" allegation that Big Picture's tribal lending business violates RICO, 18 U.S.C. § 1962(c) and certain other consumer protection laws of various states.  In *Williams II*, the relevant Purported Class Representatives assert violations of the Fair Credit Reporting Act for actions that allegedly occurred relating to *Williams I*.

64.     The Fourth Circuit's decision was issued on July 3, 2019 and reversed the *Williams I* court, which had found that Big Picture and Ascension were not arms of the LVD subject to the tribe's sovereign immunity.  *See Williams v. Big Picture Loans, LLC*, 929 F.3d at 174.  Instead, after considering the facts, the Fourth Circuit unanimously found that both were arms of the tribe, serving the "too important" federal policies of economic-development, and thus and subject to LVD's sovereign immunity.  *See id.* at 185.  The Fourth Circuit reached its conclusion "with due consideration of the underlying policies of tribal sovereign immunity, which include tribal self-governance and tribal economic development as well as protection of the tribe's monies and the promotion of commercial dealings between Indians and non-Indians."  *Id.* (quotations omitted).  It held that any restriction to tribal sovereignty was not for the Courts, but expressly for Congress. *See id.*  Accordingly, the Fourth Circuit directed that Big Picture and Ascension should be dismissed from *Williams I*, though the mandate has somehow lingered on.

### C.     The Debtor's Indemnification Obligations.

65.     The Debtor is obligated to indemnity each of the Indemnified Defendants from the Pending Actions. Pursuant to the Debtor's Operating Agreement, the Debtor is required to:

> indemnify and hold harmless the Manager and its officers, directors, partners, employees, agents, Affiliates, successors and assigns, including any guarantors of Company obligations (each of the

foregoing being a "Covered Person"), from any claim, liability, loss, judgment or damage incurred by them by reason of any act performed or omitted to be performed in connection with the activities of the Company or in dealing with third parties on behalf of the Company, including costs and attorneys' fees . . . and any amounts expended in the settlement of any claims of liability, loss or damage provided that the act or omission of the Covered Person is not found by a final, non-appealable ruling of a court of competent jurisdiction to have resulted from an act or omission of the Covered Person taken in bad faith and that constitutes fraud, gross negligence or willful breach of fiduciary duty by the Covered Person.

*See* Debtor's Operating Agreement § V(L).

66.     The Debtor's Operating Agreement further requires it to:

indemnify any Member, employee or agent of the Company who was or is a party or is threatened to be made a party to a threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, investigative, and whether formal or informal, other than an action by or in the right of the Company, by reason of the fact that such person is or was a Member, employee or agent of the Company, against expenses, including attorneys' fees, judgments, penalties, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with the action, suit or proceeding, if the person acted in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner that such person reasonably believed to be in the best interests of the Company and with respect to a criminal action or proceeding, if such person had no reasonable cause to believe such person's conduct was unlawful.

*See* Debtor's Operating Agreement § VII(B)(i).

67.     Likewise, to the extent the Debtor fails to indemnify a Member, employee or agent of the Company and that person were required to file suit to enforce the indemnification, the Debtor would be liable for the costs and fees of that suit as well.  *See* Operating Agreement § VII(B)(ii).

68.     Matt Martorello is President of the Debtor's former manager, Liont, LLC ("**Liont**") as well as the President of the Debtor.  Martorello is a named defendant in (1) *Duggan*, (2) *Smith*, (3) *Galloway I* (4) *Williams I*, and (5) *Williams II*. Martorello is entitled to indemnification from

the Debtor as a "Covered Person" pursuant to the Debtor's Operating Agreement § V(L) and § VII(B)(i), and has been indemnified by the Debtor since *Williams I* was filed.

69.     Rebecca Martorello was an employee of the Debtor's former manager, Liont. Rebecca Martorello is a named defendant in *Galloway II*, is entitled to indemnification from the Debtor as a "Covered Person" pursuant to the Debtor's Operating Agreement § V(L), and has been indemnified by the Debtor since *Galloway II* was filed.[4]

70.     Liont is the former manager of the Debtor.  Liont is a named defendant in *Galloway II*.  Liont is entitled to indemnification from the Debtor as a "Covered Person" pursuant to the Debtor's Operating Agreement § V(L), and has been indemnified by the Debtor since *Galloway II* was filed.

71.     Justin Martorello is a Member of the Debtor.  Justin Martorello is a named defendant in *Galloway II*, is entitled to indemnification from the Debtor pursuant to the Debtor's Operating Agreement § VII(B)(i), and has been indemnified by the Debtor since *Galloway II* was filed.

72.     Brian McFadden is a Member of the Debtor.  McFadden is a named defendant in *Galloway II* and *Galloway III*.  McFadden may be entitled to indemnification from the Debtor pursuant to the Debtor's Operating Agreement § VII(B)(i).

73.     James Dowd is a Member of the Debtor.  Dowd is a named defendant in *Galloway II* and *Galloway III*.  Dowd may be entitled to indemnification from the Debtor pursuant to the Debtor's Operating Agreement § VII(B)(i).

---

[4] Rebecca Martorello is Matt Martorello's wife.  In addition to moving to dismiss the complaint against her, Ms. Martorello has moved for sanctions under Fed. R. Civ. P. 11 in *Galloway II* on the basis that plaintiffs' claims therein are frivolous, vexatious, and filed for an improper purpose to harass and intimidate Rebecca and Matt Martorello.  *See Galloway II* at Docket No. 106.  The motions to dismiss and for sanctions remain pending.

74. Simon Liang is a Member of the Debtor. Liang is a named defendant in *Galloway II* and *Galloway III*. Liang may be entitled to indemnification from the Debtor pursuant to the Debtor's Operating Agreement § VII(B)(i).

75. Gallant Capital, LLC ("**Gallant'**) is a Member of the Debtor. Gallant is a named defendant in *Galloway II*, is entitled to indemnification from the Debtor pursuant to the Debtor's Operating Agreement § VII(B)(i) , and has been indemnified by the Debtor since *Galloway II* was filed.

76. From February 9, 2015 to January 1, 2016, Kairos Holdings, LLC ("**Kairos**") was a Member of the Debtor. Kairos is a named defendant in *Galloway II*. Kairos is entitled to indemnification from the Debtor pursuant to the Debtor's Operating Agreement § VII(B)(i).

77. From January 1, 2016 to the present, Breakwater Holding, LLC ("**Breakwater**") has a been a Member of the Debtor. Breakwater is a named defendant in *Galloway II*. Breakwater is entitled to indemnification from the Debtor pursuant to the Debtor's Operating Agreement § VII(B)(i).

78. Bluetech Irrevocable Trust ("**Bluetech**") is the owner of Breakwater and is a named defendant in *Galloway II* solely by virtue of its ownership of Breakwater, a member of the Debtor. Bluetech is entitled to indemnification from the Debtor pursuant to the Debtor's Operating Agreement § VII(B)(i).

79. Accordingly, the Indemnified Defendants collectively include: (1) Matt Martorello, (2) Rebecca Martorello, (3) Liont, (4) Justin Martorello, (5) Brian McFadden, (6) James Dowd, (7) Simon Liang, (8) Gallant, (9) Kairos, (10) Breakwater, and (11) Bluetech.

**E.     The Proposed Settlement and Violations of the LSA.**

80. Despite the Fourth Circuit's Decision considering the Purported Class Representatives' theories of "rent-a-tribe" and improper control by the Debtor, it found decisively

the opposite, directing the dismissal of Big Picture and Ascension from *Williams I* and the applicability of that decision on, at minimum, *Galloway I*, *Galloway II*, and *Galloway III*, neither was ever dismissed from those cases as of November 2019.

81.     On November 26, 2019, the Purported Class Representatives disingenuously filed *Plaintiffs' Motion for Preliminary Approval of Class Action Settlement* in the Galloway III Action, where, notably, the Debtor is not a party.  *See Galloway III* [Docket No. 18] (the "**Settlement Approval Motion**").

82.     The Settlement Approval Motion seeks approval of a proposed Class Action Settlement Agreement and Release (the "**Settlement Agreement'**) between the Purported Class Representatives, on the one hand, and Big Picture, Ascension, certain individual tribal defendants associated with LVD, certain lenders to Big Picture, McFadden, Dowd, and Liang (collectively, the "**Settling Defendants**"), on the other hand.  With the exception of McFadden, Dowd and Liang (the "**Settling Indemnified Defendants**"), the Debtor and the Indemnified Defendants are not parties to the Settlement Agreement (the "**Non-Settling Defendants**").

83.     The Settlement Agreement purports to settle and release all claims between the Purported Class Representatives and the Settlement Class (as that term is defined in the Settlement Agreement) and the Settling Defendants, including the claims asserted in the Pending Actions and other actions.  To that end, the complaint in *Galloway III* was amended on December 3, 2019 to include all of the Purported Class Representatives as Plaintiffs and all of the Settling Defendants as defendants.  *See Galloway III* at Docket No. 23.

84.     However, despite the fact that the Debtor itself is not a beneficiary of the Settlement Agreement, and that the Settlement Agreement does nothing for the threshold choice of law issue, Big Picture and Ascension propose to fund the $8.7 million settlement fund to be established

pursuant to the Settlement Agreement using the proceeds of the Debtor's collateral under the LSA and Promissory Note. *See* Settlement Agreement § 10.1. Moreover, Big Picture and Ascension have agreed in the Settlement Agreement to limit their revenue by collecting no more than 2.5 times the original principal amount of each loan in payments over the life of each loan for any loan made from June 22, 2013 to the date of the order preliminarily approving the Settlement Agreement. *See id.* at § 11.2. This represents an additional $11 million negative impact upon the Tribal Defendants' Promissory Note payments and is a further breach of Big Picture's and Ascension's obligations to the Debtor under the LSA and Promissory Note.

85.     In addition, the Settling Indemnified Defendants have agreed in the Settlement Agreement to either assign their equity interests in the Debtor to the Settlement Fund or to otherwise effectuate a transfer of their right to receive distributions from the Debtor on account of those equity interests to the Settlement Fund. *See id.* at § 10.2. If the Settlement Agreement is approved, the Settling Indemnified Defendants could seek the value of these transfers directly from the Debtor as a result of the Debtor's indemnification obligations.

86.     On December 16, 2019, the Debtor was forced to commence arbitration with the AAA against LVD, TED, Big Picture and Ascension as a result of Big Picture's and Ascension's agreement to enter into the Settlement Agreement and other breaches or anticipated breaches by Big Picture, Ascension, TED and LVD of the LSA, Promissory Note, and Guarantee (the "**AAA Arbitration**").

87.     On December 17, 2019, as permitted by section 8.5(e) of the LSA, the Debtor sought a temporary restraining order and preliminary injunction from the District Court for the Western District of Michigan (the "**Michigan Action**"), enjoining Big Picture, Ascension and TED from entering into the Settlement Agreement pending resolution of the AAA Arbitration

since approval of the Settlement Agreement would result in a severe negative economic impact on the Debtor and cause numerous material defaults under the LSA.

88.     On December 18, 2019, the Debtor moved to intervene in *Galloway III* to object to approval of the Settlement Agreement.  Despite the fact that the Settlement Agreement was filed without the Debtor's consent, both the Purported Class Representatives and the Tribal Defendants have vigorously opposed the Debtor's intervention.  Of particular relevance here, Purported Class Representatives in *Galloway III* seek an imminent ruling that the Debtor's asset, the LSA, is "illegal" and "unenforceable".  That motion remains pending.  As a result of the Debtor's motion to intervene and because it believed that the claims and agreements as between the Debtor, LVD and the Tribal Defendants were too complex to afford a clear entitlement to expedited relief, the court in the Michigan Action declined to grant the Debtor a temporary restraining order.  The Defendants in the Michigan Action had not filed an answer, so the Debtor filed a notice of dismissal pursuant to Fed. R. Civ. P. 41(a).

89.     On December 20, 2019, the court in *Galloway III* entered the Preliminary Approval Order, approving the Settlement Agreement on a preliminary basis.  *See Galloway III* at Docket No. 65.

90.     On December 30, 2019, the relevant Purported Class Representatives dismissed the Settling Defendants from *Smith* and *Duggan*.

91.     Crushed by the substantial fees resulting from defending itself and certain of the Indemnified Defendants in the Pending Actions, unable to maintain the status quo as contemplated under the LSA to protect itself and its collateral, and no longer receiving payments on the Promissory Note as a result of both past and prospective breaches of the LSA, Promissory Note, and Guarantee by LVD, TED, Big Picture and Ascension, the Debtor was forced to file a voluntary

petition for protection under Chapter 11 of the Bankruptcy Code with this Court on January 28, 2020.

> **E.      If the Automatic Stay Is Not Extended, the Debtor and Its Estate Will Be Irreparably Harmed.**

92.      If the Pending Actions continue and are not stayed or enjoined, the Debtor's estate will be harmed and efforts to successfully and efficiently move through this bankruptcy proceeding will be materially impacted.

93.      The Pending Actions have given rise to claims for indemnification against the Debtor.  The Indemnified Defendants will have claims against the Debtor's estate for, at a minimum, their legal fees and expenses.[5]  These claims will continue to accrue, and the amount of the claims will continue to rise, as the Pending Actions proceed and the Indemnified Defendants incur attorneys' fees and expenses and are potentially subjected to a final judgment by the courts where the actions are pending. Once incurred, the Debtor will have no recourse to reverse the impact of the Indemnified Defendants' indemnification claims. Under these circumstances, declining to apply the automatic stay to the Indemnified Defendants would defeat the very purpose of the statute intended to provide the Debtor with repose from litigation and its associated costs and distractions. Only through the extension of the automatic stay will the Debtor be protected from irreparable harm by way of the exposure, costs, and distractions associated with the prepetition Pending Actions.

94.      Allowing Purported Class Representatives' claims in the Pending Actions to proceed against any of the Indemnified Defendants while claims against the Debtor are stayed

---

[5]      Nothing contained herein is intended or shall be construed as: (a) an admission that any prepetition claim against the Debtor is valid; (b) a waiver of the Debtor's or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claims; or (d) a waiver of the Debtor's or other party in interest's rights under the Bankruptcy Code or any other applicable law.

risks prejudicing the Debtor in each of those litigations. Testimony taken in depositions in which the Debtor does not participate may affect the Debtor. Worse still, any substantive ruling as to the Indemnified Defendants may, as a practical matter, affect all parties, including the Debtor. For example, once the issue of choice of law applicable to Big Picture's loans, the Debtor will not be able to unring the bell. Thus, the continuation of the Pending Actions against any of the Indemnified Defendants could adversely impact the Debtor's ability later to defend itself against claims in the Pending Actions.

### F. The Remaining Elements for an Injunction are Readily Satisfied.

95. The additional elements necessary for an injunction—namely, the reasonable likelihood of success on the merits of the Debtor's claims in this adversary proceeding, a balance of equities favoring the Debtor, and a benefit to the public interest—are readily satisfied here.

96. For the reasons set forth above, the Debtor is likely to prevail on the merits of its request for declaratory relief and for an injunction until completion of the Debtor's restructuring process. Likelihood of success on the merits means a successful restructuring in this context. There is no question that this Court is authorized to grant such relief on this basis here. Although the Debtor's bankruptcy case has only just been filed, the Debtor has a strong likelihood of successfully reorganizing. The Debtor's assets far outweigh its liabilities at this point. However, the Debtor's assets are tied up in the very Promissory Note from the LVD itself, and the Debtor needs the protection of bankruptcy to realize on the assets secured by the Promissory Note to successfully reorganize. That said, there can be no doubt that the Debtor's prospects for a successful restructuring will be greatly enhanced if litigation against the Indemnified Defendants is stayed until the reorganization is complete. In addition, absent a stay of approval of the Settlement Agreement, there may be nothing left for the Debtor to reorganize around. Accordingly, the Debtor has made the requisite showing of likelihood of success on the merits.

97.     The likelihood of irreparable harm to the Debtor from the continuation of the Pending Actions far outweighs any risk of harm to the Purported Class Representatives and the Settling Defendants should this Court enjoin the Pending Actions until completion of the Debtor's restructuring process.  Allowing the Pending Actions to proceed clearly risks a decision by another court on threshold issues of importance to the Debtor, including choice of law.  Allowing the Pending Actions to proceed further risks depletion of the estate's resources as a result of the Debtor's obligation to indemnify the Indemnified Defendants for any and all expenses incurred in connection with that litigation.  Absent an injunction, the Debtor could be forced to liquidate.  In addition, without an injunction, this Court's authority to effectively manage this case will be jeopardized.  Conversely, the Purported Class Representatives will suffer no material harm from having to wait.

98.     Staying the Pending Actions for the duration of the Debtor's restructuring would not harm or prejudice the Purported Class Representatives in any significant way.  The Pending Actions have not reached the summary judgment stage, and no trial dates have been set.  In fact, after the Fourth Circuit's Decision was issued on July 3, 2019, the court presiding over *Williams I* required the parties to submit a Statement of Position on how the case should proceed.  *See Williams I* at Docket Nos. 613 & 629.  Five months later, the case has not developed, and that court has yet again requested another statement of positions where Matt Martorello has noted that the material briefings, for which rulings will impact the Debtor's bankruptcy estate, are so stale, that rebriefing is required.  *See id.* at Docket No. 649.

99.     The only possible prejudice that the Purported Class Representatives might suffer is delay.  But any prejudice from the short delay pales in comparison to the substantial harm to the Debtor's estate and its prospects for reorganization if the Pending Actions were to proceed.

100. Finally, the injunctive relief sought will serve the public interest by promoting the Debtor's speedy and successful conclusion of this bankruptcy proceeding—a benefit to all constituencies—and advancing the objectives of the automatic stay. Specifically, an injunction would protect assets that might otherwise have to be used to indemnify the Indemnified Defendants and provide the Debtor temporary relief from the burdens of monitoring and managing the litigations.

101. Based on the foregoing, the Debtor respectfully requests an injunction under section 105 of the Bankruptcy Code to enjoin the Pending Actions and the continued prosecution of all of Purported Class Representatives' claims against the Defendants therein until completion of this chapter 11 case.

## FIRST CLAIM FOR RELIEF
### (Section 362 – Declaratory Judgment)

102. The Debtor repeats and re-alleges Paragraphs 1–101 of this Complaint as if fully set forth herein.

103. The Debtor seeks an order staying the prosecution of Purported Class Representatives' claims in the Pending Actions as to all defendants therein until completion of the Debtor's restructuring process, pursuant to sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code.

104. The extension of the stay is warranted and necessary because continuation of the Purported Class Representatives' claims in the Pending Actions against the Indemnified Defendants exposes the Debtor to additional indemnification claims by the Indemnified Defendants, potentially diluting the property of the Debtor's estates available for creditor recoveries. The Debtor's indemnification obligations create an identity of interest between the Debtor and the Indemnified Defendants warranting extension of the automatic stay.

105.     Extension of the stay is likewise warranted and necessary because the continuation of Purported Class Representatives' claims in the Pending Actions against the Indemnified Defendants could harm the Debtor's ability and opportunity to defend itself in the Pending Actions, including through substantive rulings that may be issued without the Debtor's input or through deposition testimony that may be taken on issues relevant to the Debtor's defense without its participation.

106.     Extension of the stay over *Galloway III* and final approval of the Settlement Agreement is further warranted because final approval of the Settlement Agreement will have an adverse impact on the Debtor's ability to reorganize and will otherwise interfere with property of the estate.

107.     In short, allowing Pending Actions to continue would drain estate resources and distract from the Debtors' efforts to successfully and expeditiously move through this bankruptcy proceeding. Further, allowing the Pending Actions to proceed would thwart the statutory purpose of this chapter 11 proceeding by failing to provide the Debtor with protection from litigation pressures in its efforts to achieve a value-maximizing restructuring transaction that inures to the benefit of all stakeholders. Accordingly, the Debtor respectfully submits that this Court should extend the automatic stay to cover all defendants in the Pending Actions.

108.     Based on the foregoing, the Debtor seeks a declaratory judgment extending the automatic stay to the Indemnified Defendants pursuant to sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code.

## SECOND CLAIM FOR RELIEF
### (Section 105 – Injunctive Relief)

109.     The Debtor repeats and re-allege paragraphs 1–108 of this Complaint as if fully set forth herein.

110.    Additionally or in the alternative, the Debtor seeks an injunction pursuant to section 105 of the Bankruptcy Code barring the continued prosecution of the Pending Actions, or any of Purported Class Representatives' claims against the defendants therein, until completion of the Debtor's restructuring process.

111.    Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

112.    Here, as discussed above, the continuation of the Pending Actions would diminish and interfere with the property of the Debtor's estate and threaten its ability to successfully and efficiently reorganize. Thus, this Court should apply section 105(a) to enjoin the continuation of the Purported Class Representatives' claims in the Pending Actions as well as final approval of the Settlement Agreement in *Galloway III*.

113.    If Purported Class Representatives' claims in the Pending Actions are not enjoined, there is a substantial likelihood of irreparable injury to the Debtor, including through indemnification claims brought by the Indemnified Defendants (which, once incurred, the Debtor will have no ability to reverse); the potential depletion of estate resources to fulfill the Debtor's indemnification obligations; and an adverse impact on the Debtor's ability and opportunity to defend itself against the Purported Class Representatives' claims.

114.    The likelihood of irreparable harm to the Debtor from the continuation of the Pending Actions far outweighs any risk of harm to Purported Class Representatives and the Settling Defendants should the Court enjoin the Pending Actions until the completion of the Debtor's restructuring process.

115.     The injunctive relief sought will serve the public interest by promoting a speedy and successful conclusion of this bankruptcy case—which will inure to the benefit of all constituencies—and will advance the objectives of the automatic stay by protecting the interests of all constituencies throughout the Debtor's restructuring process.

116.     There is a substantial likelihood that the Debtor will prevail on the merits of its request for declaratory relief and for an injunction until completion of the Debtor's restructuring process.  This Court has the authority to grant such relief.

117.     Based on the foregoing, the Debtor respectfully requests an injunction under section 105 of the Bankruptcy Code to enjoin the Pending Actions and the continued prosecution of all of the Purported Class Representatives' claims until completion of this chapter 11 case.

## **PRAYER FOR RELIEF**

WHEREFORE, the Debtor respectfully demands judgment against the Defendants in this adversary proceeding, and requests relief as follows:

i.   entry of a declaratory judgment pursuant to section 362 of the Bankruptcy Code and Bankruptcy Rule 7001(9) that the automatic stay is extended to the Indemnified Defendants until completion of the Debtor's restructuring process and the continuation of the Pending Actions in any way; and

ii.  additionally or in the alternative, entry of an injunction pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 7001(7) enjoining and prohibiting continuation of the Purported Class Representatives' claims in the Pending Actions in their entirety until completion of the Debtors' restructuring process; and

iii. all such other relief as the Court may find just and proper.

Dated: January 29, 2020
      Los Angeles, California

**LOEB & LOEB LLP**

*/s/ Bernard R. Given II*           
Bernard R. Given II
State Bar No. 07990180
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067-4120
Tel.: 310-282-2000
Fax: 310-282-2200
Email:  bgiven@loeb.com

-and-

**FORSHEY PROSTOK, LLP**
Jeff Prostok
State Bar No. 16352500
Lynda Lankford
State Bar No. 11935020
777 Main Street, Suite 1290
Fort Worth, TX 76012
Tel:  817-877-8855
Fax: 817-877-4151
Email: jprostok@forsheyprostok.com
       llankford@forsheyprostok.com

*Proposed Counsel to the Debtor and Debtor in Possession*