Gary H. Leibowitz, Esq. (Admitted *Pro hac vice*)
COLE SCHOTZ P.C.
300 E. Lombard Street, Ste. 1450
Baltimore, MD 21202
Telephone: 410-230-0660
Facsimile: 410-230-0667
gleibowitz@coleschotz.com

Michael D. Warner, Esq. (TX Bar No. 00792304)
Benjamin L. Wallen, Esq. (TX Bar No. 24102623)
COLE SCHOTZ P.C.
301 Commerce Street, Suite 1700
Fort Worth, TX 76102
Telephone: (817) 810-5250
Facsimile: (817) 977-1611
mwarner@coleschotz.com
bwallen@coleschotz.com

*Counsel to the Official Committee of Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re: <br><br> EVENTIDE CREDIT ACQUISITIONS, LLC,[1] <br><br> Debtor. | Chapter 11 <br><br> Case No. 20-40349 (ELM) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 362, 363, 364, AND 507, BANKRUPTCY RULES 2002, 4001, 6004, AND 9014, (I) AUTHORIZING THE DEBTOR-IN-POSSESSION TO OBTAIN POSTPETITION FINANCING, (II) GRANTING LIENS AND PROVIDING ADMINISTRATIVE EXPENSE STATUS, AND (III) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "**Committee**") of Eventide Credit Acquisitions, LLC ("**Eventide**" or the "**Debtor**"), by its undersigned counsel, objects (the "**Objection**") to the Debtor's Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C.

---

[1] The last 4 digits of the Debtor's tax identification number is 1353.

1

§§ 105, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, (I) Authorizing the Debtor-In-Possession to Obtain Postpetition financing, (II) Granting Liens and Providing Administrative Expense Status, and (III) Granting Related Relief (the "**Motion**") [Dkt. No. 153], on the following grounds:

## PRELIMINARY STATEMENT

1. The Debtor's Motion asks the Court to approve a $2.0 million secured loan facility (the "**Proposed DIP Loan**") from The BlueTech Irrevocable Trust ("**BlueTech**"), a trust formed in the Cook Islands by the Debtor's President and sole corporate officer, Matthew Martorello ("**Martorello**"), presumably as an asset-protection device to shield his assets from creditors.[2]

2. The Motion represents to the Court that the loan is needed "to operate [the Debtor's] business and to pursue and defend itself in litigation." Motion, ¶ 1. But since the Debtor has no business, the sole purpose of the Proposed DIP Loan is to provide funds for payment of professional fees incurred and to be incurred in this case as well as in litigation outside of this Court relating to efforts to collect amounts due under the promissory note that comprises the estate's sole asset other than causes of actions against insiders.

3. As discussed below, the Proposed DIP Loan is not the result of arms'-length negotiations, and there are many problems with the terms of the Proposed DIP Loan. In particular, the interest rate and fees payable to BlueTech are excessive and unreasonable, and most importantly, approval of the Motion would eliminate or compromise the estate's avoidance actions against BlueTech, which may prove to be the largest source of recoveries for unsecured creditors.

---

[2] Martorello is both the "Settlor" and "Principal" of the trust. He is also a sophisticated entrepreneur with a degree in accounting and a Series 7 broker license, who has formed dozens of companies in the United States and Cook Islands, some of which operate out of Puerto Rico, the Virgin Islands and elsewhere.

60754/0001-20483833v3

4. For the reasons discussed below, the Committee respectfully asks that the Motion be denied. In the alternative, if any financing from BlueTech is approved, the terms and conditions of any such loan must include (i) a reasonable interest rate, (ii) no fees, (iii) a provision that funds advanced cannot be used to pay attorneys who have represented or are representing non-debtor parties in the litigation referenced in the Motion, (iv) a provision that BlueTech consents to the jurisdiction of this Court on all matters relating to the loan as well as any other controversies with the Debtor's estate, and (v) a provision preserving all of the rights, claims and remedies of the Debtor's estate against BlueTech under the Bankruptcy Code and applicable law.

## BACKGROUND

5. On January 24, 2020, the Debtor entered into an agreement with Drew McManigle of MACCO Restructuring Group, LLC to act as its Chief Restructuring Officer ("**CRO**") to advise in its restructuring efforts and potentially to lead the Debtor through a Chapter 11 bankruptcy process.

6. Shortly thereafter, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on January 28, 2020 (the "**Petition Date**").

7. On February 26, 2020, the Debtor filed an Application with the Court seeking authorization to employ Mr. McManigle as the Debtor's CRO *nunc pro tunc* to the Petition Date, [Dkt. No. 34], which the Court approved on March 27, 2020 [Dkt. No. 97].

8. On May 15, 2020, the Debtor filed its Motion.

9. Oral examinations of the Debtor's CRO and of Martorello were taken by the Committee's counsel pursuant to Bankruptcy Rule 2004 on May 20 and 21, 2020 respectively.[3]

---

[3] Due to the expedited nature of the Debtor's Motion, "reviewed" transcripts of these depositions are not available as of the filing of this Objection. Any references to deposition testimony or of statements made by other attendees to the deposition do not purport to represent *verbatim* what was said and are intended to reflect

Shockingly, the CRO testified that he was not involved in the negotiations with BlueTech for the Proposed DIP Loan whatsoever. Indeed, he never even spoke with a representative of BlueTech.

## ARGUMENT

**I.    Upon information and belief, the Debtor's estate includes substantial avoidance actions against BlueTech and its affiliates to recover tens of millions of dollars paid to them within the look back period prior to the Petition Date, and the Proposed DIP Loan would compromise these valuable assets of the estate.**

10. In addition to being Martorello's family trust (initially called "The M. Marotrello Irrevocable Trust" when it was formed), BlueTech is an insider and affiliate of the Debtor.[4] It owns 100% of Breakwater Holding, LLC ("**Breakwater**"), a Cook Island limited liability company purportedly managed by a Cook Island trust company called "ATP Directors, Ltd". Breakwater owns 59.5% of the Debtor. Gallant Capital, LLC ("**Gallant**") owns 25.5% of the Debtor, and Martorello is the 100% member of Gallant. Accordingly, Martorello controls the Debtor, Breakwater, Gallant, and arguably BlueTech.[5]

11. The Debtor's Statement of Financial Affairs [Dkt. No. 76] (the "**SOFA**") reveals that during the two-year period prior to the Petition Date, Breakwater received distributions—payments for no consideration—totaling $9,597,883.00; and Gallant received distributions totaling $4,031,550. It therefore appears that in just the two years before the Petition Date, Breakwater and Gallant received payments avoidable as preferential payments under Section 547 and fraudulent transfer under Section 548 totaling $13,629,433.00. The Committee is also

---

the substance of the statements by Debtor representatives. Copies will be provided to the Court when they are available.

[4] The DIP Motion admits that BlueTech is an affiliate on page 4.

[5] The BlueTech Trust Agreement and Trust Indemnity provide that Martorello, as the Principal, can make suggestions or recommendations to the Trustee for the use of the corpus of BlueTech, and he has the power to appoint successor trustees. In addition, the Trustee is required to act as if she was the natural person [Matt Martorello] acting as the beneficial owner of the assets.

investigating whether BlueTech received distributions indirectly from the Debtor through Breakwater. Further discovery likely will reveal that BlueTech, Breakwater, and Gallant, as well as Martorello, received tens of millions of dollars more in potentially avoidable transfers, either directly or indirectly, during the years prior to the one-year period covered by the SOFA.[6]

12. Under Sections 547, 548, and 550 of the Bankruptcy Code, based on the SOFA alone, it appears that the Debtor's estate has very large avoidance actions against BlueTech and its affiliates to recover payments made to them without consideration in the one-year period prior to the Petition Date. Discovery is required to learn about additional payments made to BlueTech and its affiliates prior to this one-year period, but upon information and belief, such additional claims are likely also in the many millions of dollars. These avoidance actions may well be the largest source of recoveries for general unsecured creditors of the Debtor.

13. Under Section 502(d) of the Bankruptcy Code, claims of a creditor are to be disallowed if such creditor received avoidable transfers, unless such creditor returns such transfers to the estate.

14. Under the Proposed DIP Loan, BlueTech would be given a lien on all assets of the Debtor's estate, including avoidance actions. As a result, if BlueTech and the Debtor were allowed to get away with this self-dealing, BlueTech would elevate its position in this case from a future defendant of avoidance actions with any claim to be disallowed, to a senior secured creditor whose claim would be entitled to be paid ahead of all other creditors. If the assets of the estate prove to be less than the amount owed on the DIP Loan, BlueTech will have essentially purchased the potential claims against it and the estate would be prevented from asserting its avoidance powers

---

[6] Martorello testified at his Rule 2004 examination on May 21, 2020 that as much as $35-$50 million was distributed by the Debtor in the four years prior to the petition date.

and ability to disallow BlueTech's claims under 11 U.S.C. ¶ 502(d). The Committee cannot imagine a worse outcome here for creditors.

**II.   The Debtor is not entitled to deference under the "business judgment" standard and the Proposed DIP Loan does not pass scrutiny under the "entire fairness" standard.**

The Proposed DIP Loan Terms are Entirely Unreasonable and Unacceptable.

15. The Motion argues that "a debtor's decision to enter into a postpetition lending facility under section 364 of the Bankruptcy Code is governed by the business judgment standard." Motion, ¶ 16 (quoting In re Barbara K. Enters., Inc., No. 08-11474, 2008 Bankr. LEXIS 1917, at **39–40 (Bankr. S.D.N.Y. June 16, 2008). That argument does not apply here.

16. The business judgment standard essentially permits a court to defer to the business judgment of a corporation's board of directors under most circumstances. However, this deference is not given if "the opposing party can show one of four elements: (1) the directors did not in fact make a decision, (2) the directors' decision was uninformed; *(3) the directors were not disinterested or independent*; or (4) the directors were grossly negligent." In re Los Angeles Dodgers LLC, 457 B.R. 308, 313 (Bankr. D. Del. 2011) (emphasis added) ("**Dodgers**").

17. If the debtor's dealings with the proposed lender were not conducted by a disinterested person, then courts do not defer to the debtor's business judgment, and instead apply a higher standard under the "entire fairness" doctrine, requiring the debtor to establish a fair price and dealings. See id. at 313.

18. In Dodgers, the debtor-in-possession sought approval of a loan that would provide a super-priority claim to a lender with which the debtor's controlling principal had an existing loan agreement, pursuant to which he had previously borrowed a large sum of money. Id. at 313. It was determined that the debtor's principal could avoid a large personal debt to his existing lender by selecting it to serve as the postpetition lender, which he attempted to do. Id. The court held

6

that such potential personal liability compromised the debtor's independent judgment, and that the debtor was not entitled to deference under the business judgment standard. Id. Instead, the court applied the "entire fairness" standard, requiring proof of fair dealing and fair price and terms, ultimately deciding that the debtor's selection did not meet the standard. Id.

19. In the present case, the terms and conditions of the Proposed DIP Loan are terribly unfair and unreasonable. Based on information extracted from the Rule 2004 testimony to date, the CRO of Martorello's company, the Debtor, had no involvement in negotiations with Martorello's trust, BlueTech, and the only person who apparently has personal knowledge of those dealings is the Debtor's counsel, Bernard R. Given II, who submitted a declaration in support of the Motion, but apparently seeks to avoid disclosure of this knowledge under the attorney work product doctrine. It appears that Martorello is on both sides of the proposed deal.

20. The terms and conditions of the Proposed DIP Loan are anything but fair and reasonable. The Court need look no further than the Debtor's previous loans from BlueTech to establish that the Proposed DIP Loan does not contain a fair price or fair terms. In December 2019, BlueTech made an unsecured loan in the amount of $1.0 million to the Debtor at an interest rate of 3% and no additional strings attached in order for the Debtor to pay legal fees. In January 2020, BlueTech made an additional $250,000.00 unsecured loan to the Debtor at 1.6% in order for the Debtor to pay retainer fees for its professionals.

21. In contrast, to these prepetition loans, the Debtor now proposes a loan from BlueTech with the following terms: (a) secured by a lien on all assets of the estate, including avoidance actions (Proposed DIP Loan Agreement ("**Agreement**"))[7], ¶ 4.1; (ii) 12% interest, and a default rate of 17% interest (Agreement, ¶ 2.3); (iii) an origination fee of $200,000.00

---

[7] Motion, Exhibit A.

(Agreement, ¶ 2.6(a)); (iv) an exit fee of an additional $200,000.00 (Agreement, ¶ 2.6(b)) ; (v) a success fee of 2% of any amounts received as a result of litigation or settlement with TED, Big Picture, Ascension, and LVD, as defined and described in the Motion (Agreement, ¶ 2.6(c)); (vi) payment of all of BlueTech's expenses (Agreement, ¶¶ 2.6(d), 9.4; (vii) a right to credit bid if there is a sale of any of the collateral (which includes avoidance actions) (Agreement, ¶ 2.8); (viii) control over the Debtors' budget (Agreement, ¶¶ 5.12, 6.12); (ix) veto rights over motions the Debtor may file (Agreement, ¶ 6.13); (x) relief from the automatic stay (Agreement, ¶ 9.1); (xi) indemnification (Agreement, ¶ 12.2); and (xii) a release (see Proposed Interim Order).

22. The Committee objects to all of these terms and provisions, as well as others not enumerated here.

23. In addition, the Proposed DIP Loan budget earmarks $600,000.00 for the Debtor's proposed Special Counsel, who also has represented and continues to represent Martorello in the same litigation for which the Debtor proposes to use loan proceeds. The same proposed Special Counsel <u>has not been approved as an estate professional, and the Committee filed an objection to the retention</u>. When combined with Debtor's other legal professionals, the Proposed DIP Loan budget earmarks approximately $2.6 million for the Debtor's professionals. The budget was never provided to the Committee or even discussed prior to its filing, and in contrast, contains an insufficient amount for Committee counsel to perform its tasks.

24. For the reasons stated above, the Proposed DIP Loan does not meet the standard required for Court approval.

<u>The Cases on which the Motion Relies Do Not Support Approval.</u>

25. It is worth briefly addressing some of the cases cited in the Debtor's Motion, as they do not support the Debtor's argument. In support of its assertion that the business judgment

standard applies in this matter, the Debtor has cited three cases: In re Barbara K. Enters., Inc., No. 08-11474, 2008 Bankr. LEXIS 1917, at **39–40 (Bankr. S.D.N.Y. June 16, 2008); In re Ames Dept. Stores, 115 B.R. 34, 38 (2008); and In re Dura Auto. Sys., Inc., No. 06-11202, 2007 Bankr. LEXIS 2764, at *272 (Bankr. D. Del. Aug. 15, 2007). Each of these cases is either inapplicable or completely distinguishable.

26. In In re Barbara K. Enters., Inc. the court noted that while deference is generally given to a debtor's business judgment, the court nevertheless has an important oversight role. 2008 Bankr. LEXIS 1917, at *40. The court also noted that the debtor does not enjoy deference under the business judgment rule if the request for financing seeks to "unfairly cede control of the reorganization to one party in interest." Id. Thus, the business judgment rule has limitations.[8]

27. Here, the Proposed DIP Loan grants a super-priority lien to BlueTech over the assets of the Debtor, including the avoidance actions. Importantly, the Debtor's only potential source of cash-flow is from the Arbitration against the Tribe, in which the Debtor hopes to be awarded as much as $20 million. Of course, it is possible that the Debtor will not prevail in the Arbitration. If that were to happen, this case would likely be converted to Chapter 7 or dismissed. In either event, BlueTech would foreclose on its collateral—i.e., all of the Debtor's remaining assets, including the avoidance actions—and would then control whether any preference actions or fraudulent transfer claims were brought against BlueTech, its affiliates, or Martorello and his affiliates. Martorello, through BlueTech and any manager of Breakwater, is ultimately in control of the Debtor, so Martorello seemingly has the power to actually set the foregoing into motion if

---

[8] Notably, the court actually denied the debtor's requested financing on the grounds that the debtor's successful reorganization was highly unlikely.

the Proposed DIP Loan were to be approved. Accordingly, the Debtor's decision accept the BlueTech loan terms is not entitled to any deference.

28. In <u>In re Ames Dept. Stores</u>, the court explained that the business judgment rule is not applied when the financing agreement contains terms that leverage the bankruptcy process and powers or has the purpose of benefiting a party-in-interest rather than the estate. 115 B.R. at 40. There, the court ultimately approved the DIP loan, but only after certain "clauses that cause concern" were modified or removed from the financing arrangement. The original loan terms—which caused concern for the court—contained no carve out for professional fees from the super-priority lien proposed to be granted to the DIP lender. <u>Id.</u> at 41. The court stated that the absence of carveouts from the DIP lender's super-priority claim for debtor's and committee's counsel, and possibly trustee's counsel, serves to prejudice the collective rights and expectations of parties-in-interest. The court only approved the final form of the DIP loan after "[a] reasonable carve out of $5,000,000 for fees of professionals" was provided.

29. Here, the Proposed DIP Loan serves only to benefit a party-in-interest—Martorello. Nearly every term of the Proposed DIP Loan is commercially unreasonable, and is designed primarily to provide Martorello benefit as both the lender and the borrower. The principle value of the loan would largely be used to pay Martorello's attorneys for non-bankruptcy services, and the Debtor would then pay Martorello's trust, BlueTech, as much as $1,040,000 in fees and interest (52% rate). Moreover, like in <u>Ames</u>, the Proposed DIP Loan contains no carveout for professionals. Accordingly, the Proposed DIP Loan is clearly designed to benefit a party-in-interest rather than the Debtor, and serves to prejudice the adversary system by potentially granting control of the avoidance actions to BlueTech, and failing to provide for a carveout for professional fees.

30. The court in <u>In re Dura Auto. Sys., Inc.</u>, No. 06-11202, 2007 Bankr. LEXIS 2764, at *272 (Bankr. D. Del. Aug. 15, 2007) does not analyze the business judgment rule as it pertains to postpetition loans. More importantly, however, the Debtor's citation is not to caselaw, but to a motion that is apparently attached to the opinion given by the court about 65 pages earlier in the document. Accordingly, the citation can be afforded no weight.

## RESERVATION OF RIGHTS

31. The Committee reserves the right to raise further and other objections to the Motion at the hearing.

## CONCLUSION

32. For the foregoing reasons, the Committee respectfully requests that the Court deny the Motion, and provide such other and further relief as it deems just and proper.

Dated: May 26, 2020

**COLE SCHOTZ P.C.**

By: */s/ Michael D. Warner*
Michael D. Warner (TX Bar No. 00792304)
Benjamin L. Wallen (TX Bar No. 24102623)
301 Commerce Street, Suite 1700
Fort Worth, TX 76102
(817) 810-5250
(817) 977-1611 (Facsimile)
mwarner@coleschotz.com
bwallen@coleschotz.com

and

Gary H. Leibowitz (Admitted *pro hac vice*)
300 E. Lombard Street, Suite 1450
Baltimore, MD 21202
410-230-0660
410-230-0667 (Facsimile)
gleibowitz@coleschotz.com

*Counsel for the Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of May, 2020, a true and correct copy of the foregoing *Objection of the Official Committee of Unsecured Creditors to Debtor's Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, (I) Authorizing the Debtor-In-Possession to Obtain Postpetition financing, (II) Granting Liens and Providing Administrative Expense Status, and (III) Granting Related Relief* was served upon all parties that are registered to receive electronic service through the court's CM/ECF notice system in the above case.

/s/ Michael D. Warner
Michael D. Warner