Gary H. Leibowitz, Esq. (Admitted *Pro hac vice*)
Irving E. Walker, Esq. *(Admitted Pro hac vice)*
COLE SCHOTZ P.C.
300 E. Lombard Street, Ste. 1450
Baltimore, MD 21202
Telephone: 410-230-0660
Facsimile: 410-230-0667
gleibowitz@coleschotz.com

Michael D. Warner (TX Bar No. 00792304)
COLE SCHOTZ P.C.
301 Commerce Street, Suite 1700
Fort Worth, TX 76102
Telephone: (817) 810-5250
Facsimile: (817) 977-1611
mwarner@coleschotz.com

*Counsel to the Official Committee of Unsecured Creditors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| EVENTIDE CREDIT ACQUISITIONS, LLC,[1] | Case No. 20-40349 (ELM) |
| Debtor. | |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR SANCTIONS FOR BAD FAITH FILING PURSUANT TO 11 U.S.C. §§ 105 AND 329, AND BANKRUPTCY RULES 2016 AND 9011

The Official Committee of Unsecured Creditors (the "**Committee**") of Eventide Credit Acquisitions, LLC ("**Eventide**" or the "**Debtor**"), by its undersigned counsel, hereby files this Motion for Sanctions (the "**Motion**") pursuant to 11 U.S.C. §§ 105, 329, Bankruptcy Rules 2016, and 9011, on the following grounds

---

[1] The last 4 digits of the Debtor's tax identification number is 1353.

1

<u>**PRELIMINARY STATEMENT**</u>

1.      After conducting an extensive evidentiary hearing, this Court ruled on June 9, 2020

that the Debtor failed to file and prosecute the above-captioned Chapter 11 case in good faith, and

determined that the Chapter 11 case should be dismissed.  *See* Transcript from June 9, 2020 ruling

(the "<u>Transcript</u>") at 51-52.

2.      In reaching its decision, the Court unequivocally found:

- **. . .** that the Bankruptcy Case was **clearly filed as the next step in a strategy to try to assist Martorello** and individuals and entities affiliated with Martorello in **finding a way to forum shop** away from the District Court in the District of Virginia . . .  Transcript at 53-54. (emphasis added).

- Martorello has effectively resorted to name-calling, and the Debtor, through counsel, **surprisingly and brazenly stated that, to the extent any of the Consumer Borrowers are ever found to hold any legitimate allowed claims against the Debtor, the Debtor will simply separately classify them**, apparently **previewing the Debtor's intent to gerrymander a vote on** a plan in such instance.  Transcript at 55.  (emphasis added).

- The **Debtor's actions are not being taken under the direction and control of McManigle as the Debtor's independent Manager and CRO**.  Instead, it is clear that **the Cook Islands entity Breakwater**, as the one hundred percent voting member of the Debtor, which in turn is wholly owned by the Cook Islands entity Bluetech, **is directing the actions of the Debtor, to the exclusion of McManigle.**  This is evident by virtue of the fact that McManigle had zero involvement in reviewing the proofs of claim that have been objected to, zero involvement in any discussions or negotiations with any of the Tribal Defendants, and **perhaps most shockingly**, zero involvement in any discussions or negotiations with Bluetech as the proposed DIP Lender, who astoundingly seeks to leverage the Bankruptcy Case to its benefit while at the same time **thumbing its nose** at the concept of subjecting itself to the jurisdiction of this Court . . .  Transcript at 55-56. (emphasis added).

3.      The Court also found that:

. . . contrary to the Debtor's arguments of filing the Bankruptcy Case to stop the bleeding and preserve value, **the Bankruptcy Case has been nothing but bleeding, with the Debtor having already incurred upwards of $800,000 in professional fees, predominantly in litigation in three different adversary proceedings that is duplicative** of the arbitration in the case of the Tribal

Defendants **and which has, in any event, netted zero beneficial results for the estate.** Transcript at 52-53.

4.      In order to stop the Debtor's improper use of this Court and the Chapter 11 process, and to prevent further harm to the Debtor's unsecured creditors, the Committee had to obtain the undersigned counsel, and litigate numerous contested matters to reveal the previously hidden facts evidencing the  bad faith conduct for the Court to see.

5.      The Committee's counsel, however, only received fees of $33,341.20 and costs of $721.88 for the services rendered and costs incurred to stop the Debtor's bad faith filing, because the Debtor's lead bankruptcy counsel Loeb & Loeb, local counsel Forshey & Prostock, and Chief Restructuring Officer ("CRO") Macco (together, the "Debtor's Professionals"), received in excess of $200,000 from the estate during the case, not including their prepetition retainers.[2]  The Committee's counsel is still owed $270,125.79 in fees.

6.      Allowing the Debtor's Professionals to retain the hundreds of thousands of dollars which they improperly received from the Debtor and estate to aid and abet the bad faith filing is contrary to the underlying principles of bankruptcy, and to §§ 105 and 329 of the Bankruptcy Code.   Indeed, both the CRO, and the Debtor's President and sole officer Matt Martorello ("Martorello"), repeatedly testified under oath at the Rule 2004 examinations, and hearing on the Motions to Dismiss, that the Debtor's actions were handled by counsel (i.e. DIP loan negotiations, claim objections, etc.).

7.      Accordingly, the Committee requests that this Court enter an order awarding sanctions against the Debtor and the Debtor's lead bankruptcy counsel, and require the payment

---

[2] Debtor's professionals also received prepetition retainers as follows:  (i) Loeb & Loeb $200,000; (ii) Forshey & Prostock $25,000; and (iii) Macco $40,000.

60754/0001-20654059v3

of all of the Committee's professionals' outstanding fees and costs by the Debtor and/or by the Debtor's lead bankruptcy counsel through disgorgement of the funds they received from the estate.

## ARGUMENT

**I.      Sanctions should be imposed against both the Debtor and the Debtor's Professionals.[3]**

8.      It is well-settled that a federal court, acting under its inherent authority, may impose sanctions against litigants or lawyers appearing before the court so long as the court makes a specific finding that they engaged in bad faith conduct. *See In re Yorkshire LLC (Knight v. Luedtke, et al.)*, 540 F.3d 328, 332 (5th Cir. 2008); *Elliott v. Tilton,* 64 F.3d 213, 217 (5th Cir.1995) (citing *Resolution Trust Corp. v. Bright,* 6 F.3d 336, 340 (5th Cir.1993); *In re Thalheim,* 853 F.2d 383, 389 (5th Cir.1988)); *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765–66, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

9.      Pursuant to 11 U.S.C. § 105, "[a] bankruptcy court has statutory authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.' " *In re Dobbs,* 535 B.R. 675, 691 (Bankr. N.D. Miss. 2005); *see Law v. Siegel,* 571 U.S. 415 (2014).   "The clear language of 11 U.S.C. § 105(a) grants this Court significant equitable powers as well as latitude in framing the relief necessary to carry out both the specific provisions of the statute as well as its philosophical underpinnings." *In re Ludwick,* 185 B.R. 238, 245 (Bankr. W.D. Mich. 1995).   Thus, the Court has the authority to impose sanctions against the Debtor under § 105.

---

[3] Since Martorello and Debtor's counsel excluded the CRO and prevented him from performing, the Committee does not seek sanctions against Macco.  The Committee also does not seek sanctions against the Debtor's local counsel Forshey & Prostock.

10.     Rule 9011 expressly requires that every representation made to the Court be made with a proper purpose and not to cause unnecessary delay or increase the cost of litigation. *See* Fed.R.Bankr.P. 9011(b).

11.     In this case, following an extensive hearing in which the Bankruptcy Court heard testimony from the parties and witnesses, the Bankruptcy Court made specific findings that the Debtor with its counsel acted in bad faith.  Additionally**,** the filing of the voluntary petition, retention of the CRO, request for approval of a DIP Loan from an insider, and nearly every other material action taken in the case, was taken with an improper purpose, to delay the consumer borrowers' non-bankruptcy court putative class settlement with the Tribe, and to increase the costs of litigation on the consumer borrowers.  Consequently, this Court has the authority to impose sanctions against the company under § 105 and against the Debtor's Professionals under Rule 9011.  *See Triad Financial Corp. v. Peake (In re Nair),* 202 Fed.Appx. 765, 766 (5th Cir. 2006) (reviewing  the bankruptcy court's  imposition  of sanctions under  Rule  9011(c) for  a 9011(b) violation and finding that the bankruptcy court did not abuse its discretion).

12.     "In determining whether a party has violated Rule 9011 . . . the imposition of Rule 11 sanctions . . . requires only a showing of objectively unreasonable conduct.'" *In re Dobbs,* 535 B.R. at 686-87; *In re Taylor,* 655 F.3d 274, 282 (3d Cir. 2011) (quoting *Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc.,* 57 F.3d 1215, 1225 (3d Cir.1995)).  The standard to be applied is "reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.,* 498 U.S. 533, 551 (1991).  Reasonableness is defined as an "objective knowledge or belief at the time of the filing of a challenged paper" that the claim was well-grounded in law and fact. *Jones v. Pittsburgh Nat. Corp.,* 899 F.2d 1350, 1359 (3d Cir.1990).

13.     This Court already considered the facts and circumstances of the case at hand, and found that the filing and prosecution of the Chapter 11 case was in bad faith.  Given the Debtor's own admission through its counsel which "surprisingly and brazenly stated that, to the extent any of the Consumer Borrowers are ever found to hold any legitimate allowed claims against the Debtor, the Debtor will simply separately classify them, apparently previewing the Debtor's intent to gerrymander a vote on a plan in such instance" [4], there is clear and convincing proof that the Debtor, and the Debtor's lead bankruptcy counsel, acted in bad faith and willfully abused the judicial process.  *In re Moore,* 739 F.3d 724, 729–30 (5th Cir. 2014).[5]

14.     The Fifth Circuit Court of Appeals has previously held that courts can penalize parties that tax an already busy bankruptcy court system with bad faith filings.  In an *en banc* decision, the Fifth Circuit held that a bankruptcy court did not abuse its discretion by imposing $90,000 in monetary sanctions following the bad faith filing of two bankruptcy petitions.  *In re Yorkshire LLC (Knight v. Luedtke, et al.)*, 540 F.3d 328 (5th Cir. 2008).

15.     Much like the facts here, the bankruptcy court in *Yorkshire* found that (i) the bankruptcy petition was prepared and filed without consulting any other person with authority to act on behalf of the companies, and (ii) counsel conducted little, if any, due diligence about whether bankruptcy was appropriate under the circumstances and who was vested with the authority to make such decisions on behalf of the debtor companies.  On appeal, the Fifth Circuit noted that appellants did not act in the best interest of the companies, concealed their actions from

---

[4] *See* Transcript at 55.

[5] Section 329 allows the Court to examine "compensation paid or agreed to be paid" within one year before the filing of the case "in contemplation of or in connection with the case."  The Court has the ability to order the return of compensation if "such compensation exceeds the reasonable value of such services."  Section 329 protects the interest of creditors by ensuring that debtors do not transfer property to their attorney to keep it out of the estate. The services rendered to the Debtor provided no value to the Debtor as shown by the MOR's filed in the case which demonstrate that the company did not add a single dollar to the estate during the bankruptcy case.

the creditors, and filed "to inflict injury … with a bad motive and with no meaningful thought being given to the purposes of chapter 11 bankruptcy."

16. In upholding the bankruptcy court's decision, the Fifth Circuit further noted that the bankruptcy court specifically found that the appellants acted in bad faith by using the bankruptcy filing as a means to inflict injury on others after becoming frustrated by the exhaustion of available state court remedies. Similarly, after becoming frustrated with the United States District Court Judge in Virginia, and after failing to obtain relief in the United States District Court of Michigan, Martorello and the Debtor used this Court as further their improper strategy.

II.     **The dismissal of the case does not prevent the imposition of sanctions**.

17. This Court's authority to impose sanctions under §105 and Rule 9011 are not diminished by the dismissal of the Debtor's bankruptcy case in which the misconduct occurred. *See, e.g. Garrett v. Coventry II DDR/Trademark Montgomery Farm, L.P. (In re White–Robinson),* 777 F.3d 792, 795–96 (5th Cir. 2015) (holding that bankruptcy court retained jurisdiction to enforce attorney sanctions despite debtor's receipt of discharge); *In re Henderson,* 360 B.R. 477, 484 (Bankr.D.S.C.2006) ("[t]he fact that these cases are closed does not divest this Court of jurisdiction as jurisdiction is not dependent on the technicality of a case being 'open.'"). To conclude otherwise would lead to an absurd and illogical result, incentivizing attorneys to allow cases in which they had committed misconduct to be dismissed, thereby permitting those attorneys "to escape review of their performance based upon their very failure to provide adequate services to debtors which resulted in the dismissal of the case." *Henderson,* 360 B.R. at 484.

18. Here, the case did not result in any identifiable, tangible, and material benefit to the Debtor's interest. No plan was confirmed, and the Debtor failed to recover a single dollar from any source during the pendency of the case. The Debtor, and the Debtor's lead bankruptcy counsel,

7

should be required to pay for the Committee's professional fees which were actual and necessary to protect the interest of creditors and to assist in the process of obtaining dismissal of the bad faith filing.

19.     The Committee does not contend that the Debtor's **lead bankruptcy counsel** should disgorge their fees simply because the case turned out badly. To the contrary, the fees should be disgorged because the case was utilized to harm the consumer borrowers and delay their non-bankruptcy court efforts to consummate a settlement with the LVD Tribe. Given the number of pending cases around the country against similar rent-a-tribe lending schemes, the imposition of sanctions here will make others think twice before attempting to use the bankruptcy courts to advance an improper motive.

20.     The Committee understands that sanctions should not be hastily imposed by the Court. But Rule 9011(c)(2) provides for sanctions to be imposed to deter repetition of such conduct or comparable conduct by others similarly situated. This is precisely the type of case the Rule was created stop.

60754/0001-20654059v3

## <u>CONCLUSION</u>

21.     For the foregoing reasons, the Committee respectfully requests that the Court grant the Motion, enter an Order directing the Debtors' lead bankruptcy counsel  to disgorge all fees paid to them by the Debtor in connection with the bankruptcy case, to award Committee counsel a portion of the fees disgorged as the Court deems just and proper; and providing such other and further relief as the Court deems just and proper.

Dated:   June 17, 2020

**COLE SCHOTZ P.C.**

By: */s/ Michael D. Warner*
Michael D. Warner (TX Bar No. 00792304)
301 Commerce Street, Suite 1700
Fort Worth, TX 76102
(817) 810-5250
(817) 977-1611 (Facsimile)
mwarner@coleschotz.com

and

Gary H. Leibowitz (Admitted *pro hac vice*)
Irving E. Walker (*Admitted pro hac vice*)
300 E. Lombard Street, Suite 1450
Baltimore, MD 21202
410-230-0660
410-230-0667 (Facsimile)
gleibowitz@coleschotz.com

*Counsel for the Official Committee of*
*Unsecured Creditors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of June, 2020, a true and correct copy of the foregoing *Official Committee of Unsecured Creditors' Motion for Sanctions* was served upon all parties that are registered to receive electronic service through the court's CM/ECF notice system in the above case.


*/s/ Michael D. Warner*
Michael D. Warner

10

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| EVENTIDE CREDIT ACQUISITIONS, LLC,[6] | Case No. 20-40349 (ELM) |
| Debtor. | |

**ORDER GRANTING THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS' MOTION FOR SANCTIONS**

Upon consideration of the Official Committee of Unsecured Creditor's Motion for Sanctions,

and any responses thereto, the Court is of the opinion that the Motion should be GRANTED for the

reasons announced on the record at the Hearing. Accordingly,

---

[6] The last 4 digits of the Debtor's tax identification number is 1353.

11

60754/0001-20654059v3

**IT IS HEREBY ORDERED** that the Debtor's lead bankruptcy counsel  shall disgorge the funds received from the estate for payment of their fees and such funds shall be used to pay the allowed fees of Committee's Court approved professionals.

**# # # END OF ORDER # # #**

60754/0001-20654059v3