United States Department of Justice
Office of the United States Trustee
1100 Commerce St.  Room 976
Dallas, Texas  75242
(214) 767-1075

Erin Marie Schmidt,
for the United States Trustee

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **Eventide Credit Acquisitions, LLC,** | § | **Case No. 20-40349-ELM-11** |
| | § | |
| | § | |
| **Debtor.** | § | |

**United States Trustee's Motion to Review Debtor's Transactions with Counsel
under 11 U.S.C. § 329**

TO THE HONORABLE EDWARD LEE MORRIS, UNITED STATES BANKRUPTCY JUDGE:

William T. Neary, the United States Trustee for the Region 6 ("United States Trustee"), requests that that the Court review Debtor's transactions with counsel under 11 U.S.C. § 329.   The United States Trustee would show:

**Summary**

The Court dismissed this case under 11 U.S.C. § 1112(b) after finding that Debtor lacked good faith, in part, because the filing was part of an ongoing litigation strategy intended to benefit Debtor's insiders and affiliates.  But while the case is dismissed, the Court still retains jurisdiction over Debtor's attorney's fees.  Given the Court's findings, the Court should review Debtor's transactions with bankruptcy counsel to determine

1

whether its attorneys put the interests of insiders ahead of the estate's, and, to the extent that the Court determines that such counsel's compensation exceeds the reasonable value of such services, whether counsel should disgorge any monies received either before or after the filing of the petition.

## Jurisdiction

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334 and the order of reference of the United States District Court for the Northern District of Texas.

2. Disciplinary proceedings, including disgorgement of fees, are core proceedings. 28 U.S.C. § 157(b)(2)(A) and (O).

## Facts

General background

3. Debtor filed its voluntary chapter 11 petition in the United States Bankruptcy Court for the Northern District of Texas on January 28, 2020, commencing case no. 20-40349-ELM-11.

4. The United States Trustee appointed an official committee of unsecured creditors ("Committee"). [docket no. 14].

5. As of the petition date, Debtor was a shell company whose sole assets were $247,025.01 in financial accounts and a $60 million receivable.

6. The $60 million receivable arose some years before, when Debtor and its insiders had partnered with the Lac Vieux Desert Bank of Lake Superior Chippewa Indians; Tribal Economic Development Holdings, LLC; Big Picture Loans, LLC; Ascension Technologies, LLC; and LVD Tribal Acquisition Company, LLC (collectively, "Tribal Entities") to develop a payday lending business.

2

7. This lending business led to numerous lawsuits filed by various consumer borrowers ("Consumer Borrowers") against the Tribal Entities, Debtor, and Debtor's insiders.

8. Debtor filed for bankruptcy after the Tribal Entities agreed to pay back Consumer Borrowers from monies that normally would have flowed to Debtor pursuant to the receivable.

Management and insiders

9. Debtor retained MACCO Restructuring Group, LLC and its principal, Drew McManigle, to serve as chief restructuring officer ("CRO") and manager under 11 U.S.C. § 363(b).

10. Mr. McManigle signed Debtor's petition, schedules, and statement of financial affairs as "manager."

11. Debtor's president is Matt Martorello, who is separately represented in the bankruptcy proceedings by Robin Phelan of PhelanLaw.

12. Debtor's 59.6% member is Breakwater Holdings, LLC ("Breakwater"), which is a Cook Islands entity. SOFA 28.

13. Breakwater is 100% owned by the Bluetech Irrevocable Trust ("Bluetech Trust"), a Cook Islands entity that used to be named the "M. Martorello Irrevocable Trust." 06/09/2020 Tr. 15:23-24.

14. Matt Martorello founded and settled the Bluetech Trust for the benefit of his family members. Tr. 16:10-12.

15. Debtor listed Bluetech Trust as a general unsecured creditor for two unsecured loans totaling $1,250,000.00. Schedule E/F, creditor 3.9, 3.10, and 3.11.

16. According to Schedule E/F, Debtor has indemnified the litigation expenses for Breakwater, Bluetech, and other insiders for "unknown" amounts.

Retention and pre-petition payment of Debtor's professionals

17. The Court approved Debtor's retention of two law firms in connection with this bankruptcy:

    a. Loeb & Loeb LLP ("Loeb") as lead counsel under 11 U.S.C. § 327(a);

    b. Forshey & Prostok, LLP ("F&P") as co-counsel under § 327(a); and

    c. MACCO Restructuring Group, LLC ("MACCO") and Drew McManigle as Debtor's manager and chief restructuring officer ("CRO") under 11 U.S.C. § 363(b).

18. Debtor originally retained Loeb in August 2019 "as creditor's rights counsel in connection with obligations owed to the Debtor by the The Lac Vieux Desert Bank of the Chippewa Indians and its affiliated entities." [docket no. 20-1 ("Givens Declaration") at ¶ 5(a)].

19. In October 2019, Loeb had also separately represented "certain members and affiliates of the Debtor, Kairos Holdings, LLC, Bluetech Irrevocable Trust, and Breakwater Holdings, LLC (the 'Affiliates')." *Id.* (emphasis included).

20. Loeb worked for both Debtor and the Affiliates under a "joint interest privilege agreement." *Id.*

21. Loeb stopped representing the Affiliates prior to the filing of Debtor's petition; these Affiliates are currently represented by Jon Hollis of Wood Rogers PLC ("Wood Rogers"); Mr. Hollis previously worked for Loeb. *Id.*

22. Loeb was paid $206,809.07 "by or on behalf of the Debtor for services rendered on

4

the Debtor's behalf" in the five months before the bankruptcy filing date. *Id.* at ¶ 13.

23. Prior to the filing of the case, on January 27, 2020, the Bluetech Trust loaned Debtor $250,000.00 ("Bluetech Loan Proceeds"); these funds were deposited into Loeb & Loeb's IOLTA. [docket no. 76 at 15].

24. Immediately before Debtor filed for bankruptcy, Loeb allocated this $250,000.00 in loan proceeds from its IOLTA as follows:

 a. $50,000.00 for Loeb's bankruptcy retainer;
 b. $89,165.97 applied to Loeb's prepetition balance;
 c. $25,000.00 to F&P;
 d. $40,000.00 to MACCO;
 e. $10,000.00 to Wood Rogers; and
 f. $35,834.03 to Debtor's DIP account.

SOFA 11.1-11.3.

25. The $10,000.00 to Wood Rogers was paid pursuant to Debtor's indemnification agreement with the Affiliates. Givens Declaration at ¶ 13.

26. As of the petition date, Loeb held a $50,000.00 retainer. Givens Declaration at ¶ 13.

27. F&P applied $19,936.00 of this retainer to prepetition fees and expenses, leaving $5,064.00 in their IOLTA. [docket no. 18 at ¶ 18].

<u>Debtor files application to employ Armstrong Teasdale LLP as Special Counsel</u>

28. Debtors also filed an application to retain Armstrong Teasdale LLP ("Armstrong") as special counsel under 11 U.S.C. § 327(e). [docket no. 120].

29. The Committee objected to Armstrong's retention because the firm also represented

5

the other non-debtor defendants in the Consumer Borrower litigation, including Matt Martorello. [docket no. 122].

30. Armstrong's application was never set for hearing before the Court and therefore has never been approved.

<u>Post-petition fee applications to date</u>

31. On May 26, 2020, Loeb filed its amended first interim application seeking approval of $490,500.00 in fees and $11,043.57 in expenses incurred for the period January 28, 2020 through April 30, 2020. [docket no. 171].

32. On May 22, 2020, F&P filed its first interim application seeking approval of $422,538.19 in fees and $8,356.55 in expenses for the period January 28, 2020 through April 30, 2020. [docket no. 164].

33. On May 26, 2020, Cole Schotz P.C. filed its first interim application seeking approval of $174,094.50 in fees and $3,806.74 in expenses for the period February 7, 2020 through April 30, 2020. [docket no. 176].

34. The Court has not entered any orders approving the payment of professional fees on either an interim or final basis under 11 U.S.C. §§ 330(a) or 331.

<u>Consumer Borrowers move to dismiss case</u>

35. On April 9, 2020, the Consumer Borrowers moved to dismiss the chapter 11 bankruptcy case under 11 U.S.C. § 1112(b)(1) ("Motion to Dismiss") based on Debtor's lack of good faith. [docket no. 123]. In the alternative, the Consumer Borrowers sought abstention under 11 U.S.C. § 305(a)(1).

36. The Committee joined the Consumer Borrowers' Motion to Dismiss. [docket no.

37. Debtor opposed dismissal, arguing that the case was filed in good faith because it

6

was filed for two valid bankruptcy purposes: 1) to preserve the value of the promissory note and 2) to reduce duplicative and excessive costs of pre-petition litigation pending across multiple jurisdictions.

38. Debtor's president Mark Martorello joined Debtor's objection to dismissal.

Debtor's Motion to Incur DIP Financing

39. Debtor filed a motion to borrow $2 million from Bluetech Trust to pay post-petition administrative expenses ("DIP Motion"). [docket no. 153].

40. Under the terms of the proposed DIP, Bluetech Trust would receive a lien against the proceeds of any chapter 5 causes of action.

41. In the two years prior to the filing of the case, Debtor distributed millions to insiders, including $9.6 million to Breakwater and $4 million to Gallant Capital, LLC.

42. The Committee objected to the DIP Motion because 1) the proposed DIP was not the result of arms' length negotiation between parties; 2) the interest rates and fees were excessive; and 3) approval would eliminate or compromise the estate's actions against Bluetech. [docket no. 168].

43. After the Committee objected to the proposed DIP, Debtor filed an amended DIP financing agreement that provided that Bluetech Trust did not submit itself to the jurisdiction of any U.S. court, including the bankruptcy court. [docket no. 181].

Bankruptcy Court's ruling on motion to dismiss case

44. The Court conducted evidentiary hearings on the Consumer Borrower's Motion to Dismiss on May 28, 2020 and Debtor's DIP Motion on May 29, 2020.

45. On June 9, 2020, the Court orally ruled that, "based upon a totality of the circumstances," Debtor "has not filed and prosecuted the Bankruptcy Case in good faith."

7

06/09/2020 Transcript 51:24-52:1.

46. Specifically, the Court found the following:

- Debtor not an operating business with any "true going concern operation to preserve." 52:2-5.

- Debtor filed bankruptcy as "next step in a strategy to try to find a court willing to temporarily or permanently prevent the Tribal Defendants from consummating" a settlement negotiation with Consumer Borrowers. 52:6-9.

- Debtor filed bankruptcy as "the next step in a strategy to try to assist Martorello and individuals and entities affiliated with Martorello in finding a way to forum shop away from the District Court in the Eastern District of Virginia." 53:24-54:54:3.

- Debtor's and Martorello's actions were antithetical to stated purposes of filing bankruptcy. 54:23-55:9.

- Debtor was not controlled by its purported CRO Drew McManigle but instead took direction from its 100% voting member Cook Islands Breakwater, which in turn is wholly owned by Bluetech Trust, another Cook Islands entity. 55:10-16.

- Debtor has financial assets to address its liabilities. 56:2-17.

47. The Court also denied the DIP Motion as moot. 57:16-17. The Court observed that even if the case had not been dismissed, it "cannot envision any circumstances under which it would approve DIP financing for litigation costs from an insider who refuses to subject itself to the jurisdiction of the Court on the type of terms proposed." 57:18-22.

<u>United States Trustee asks Court to retain jurisdiction over fees</u>

8

48.     At the end of its June 9, 2020 Ruling, the United States Trustee's representative asked the Court to retain jurisdiction over professional fees.

49.     The Court requested that the United States Trustee file a motion within 14 days after entry of the dismissal order requesting for retention of jurisdiction on "on a limited basis" for the purpose of determining whether Debtor's professionals were conflicted during their representation of Debtor in the bankruptcy. 06/09/2020 Tr. 59:23-60:17.

50.     The Court entered its order dismissing the case ("Dismissal Order") on June 18, 2020. [docket no. 288].

51.     The fourteenth day after June 18, 2020 is July 2, 2020.

Committee moves for sanctions

52.     On June 17, 2020, the Committee filed its *Motion for Sanctions for Bad Faith Filing Pursuant to 11 U.S.C. §§ 105 and 329, and Bankruptcy Rules 2016 and 9011* ("Sanctions Motion"), which is set for hearing on July 13, 2020 at 1:30 pm. [docket no. 285 and 286].

53.     The Committee seeks disgorgement of all funds received by Debtor's lead counsel for payment of fees, and for those funds to be applied to the allowed fees of Committee's professionals. Sanctions Motion at ¶ 21.

Debtor appeals Dismissal Order

54.     Debtor timely appealed the Dismissal Order on June 28, 2020.

**Argument**

Court should retain jurisdiction over fees

55.     The United States Trustee requests that the Bankruptcy Court retain jurisdiction over Debtors' professionals' fees in this case so that it may review Debtor's transactions

9

with counsel under § 329 of the Bankruptcy Code.

<u>Applicable statutory authority</u>

56. Section 327(a) of the Bankruptcy Code states:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

57. Section 328(c) of the Bankruptcy Code states:

> (c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c).

58. Section 329(b) of the Bankruptcy Code provides in pertinent part:

> (b) If such compensation [received by an attorney representing a debtor in this case] exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
>
> > (1) the estate, if the property transferred--
> > (A) would have been property of the estate; or
> > (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
> >
> > (2) the entity that made such payment.

11 U.S.C. § 329(b).

Courts may retain jurisdiction over fees in a closed case

59. Under the general "arising under" jurisdiction of 28 U.S.C. § 1334, a bankruptcy court may exercise jurisdiction over fees in a closed case. See *In re Brown*, 371 B.R. 486, 494-95 (N.D. Okla. 2007) ( "jurisdiction to review [ ] fees is not dependent on whether the status of the case stands as open, closed, pending, or dismissed"). *See also, In re Garris,* 496 B.R. 343, 354 (Bankr. S.D.N.Y. 2013); *Tsafaroff v. Taylor (In re Taylor),* 884 F.2d 478, 481 (9th Cir. 1989). More specifically, 28 U.S.C. § 1334(e)(2) provides that the district court shall have "exclusive jurisdiction" over "over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327." 28 U.S.C. § 1334(e)(2).

60. This retention of jurisdiction makes sense given that bankruptcy case "fees are not a matter for private agreement;" instead, there is an "inherent…'public interest' that 'must be considered in awarding fees.'" 1978 Revision Notes for 11 U.S.C. § 330, *citing Massachusetts Mutual Life Insurance Co. v. Brock,* 405 F.2d 429, 432 (5th Cir. 1968), cert. denied, 395 U.S. 906 (1969). The revesting of the estate with a debtor upon dismissal under 11 U.S.C. § 349 "does not render any private contract for attorney fees incurred during the case enforceable without judicial review under § 330. *In re 5900 Ass'c., LLC,* 326 B.R. 402, 409 (E.D. Mich. 2005). The bankruptcy court's continued oversight over fees after dismissal prevents overreaching by counsel who might encourage debtors to seek dismissal as a means to avoid court scrutiny over their own fees. *In re Quaker Distributors, Inc.,* 189 B.R. 63, 68 (Bankr. E.D. Pa. 1995).

Cause exists to review Debtor's transaction with counsel under 11 U.S.C. § 329

61. Cause exists to review Debtor's transactions with counsel under 11 U.S.C. § 329(b).

11

The Court made specific findings that Debtor did not file in good faith, and that some of its actions were intended to benefit insiders at the expense of the estate and creditors. These findings raise questions as to whether Debtor's counsel put the interests of the bankruptcy estate and its creditors behind those of its insider, Matt Martorello, and his affiliates. *See In re West Delta Oil*, 432 F.3d 347, 356 (5th Cir. 2005) (holding party adversely interested if it "possess[es] or assert[s] any economic interest that would tend to lessen the value of the bankruptcy estate"). Should the Court determine that Debtor's counsel held an adverse interest during the pendency of this case, the Court may deny its compensation. 11 U.S.C. § 328(c).

62. If an attorney's compensation exceeds the reasonable value of the services provided, the court may order the return of any such payment as it deems excessive to either the estate or to the entity who made such payment. 11 U.S.C. § 329(b)(1) and (2). The Court may direct disgorgement of excessive fees paid either before or after the filing of the order for relief. Fed. R. Bankr. P. 2017(a) and (b). Section 329(b) also authorizes the Court to review and adjust prepetition retainers regardless of how the retainer is titled and without reference to the retainer's source. *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 571 (Bankr. N.D. Tex. 1986) ("[A]ny agreement concerning compensation executed may be canceled by the Court.").

63. In *In re Humble Place Joint Venture,* the Fifth Circuit of Appeals affirmed the bankruptcy court's findings that Debtor's counsel was conflicted by virtue of it having represented Debtor's insiders prior to the bankruptcy. *Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture),* 936 F.2d 814, 819 (5th Cir. 1991). The bankruptcy court had made this determination after finding that "the proposed plan was

12

clearly formed to benefit the partners rather than the creditors and that it would have been very hard for debtor's counsel, in light of this purpose, to decide how to structure the plan." *Id.* at 819. The Fifth Circuit held that the bankruptcy court did not err when it directed disgorgement of counsel's retainer because of this actual conflict. *Id.*

64.     The facts of this case parallel those of *Humble Place*. While Mr. Martorello retained separate legal counsel, Debtor's counsel appeared to primarily represent the interests of Mr. Martorello and his offshore entities, and not those of the estate and its creditors. Before the filing of the case, Loeb represented both Debtor and its insiders; it only stopped its representation of these insiders before the filing of the case. These same insiders funded loans to Debtor for purpose of paying its professional fees.

65.     The Court also made findings that Debtor's counsel did not consult with Debtor's CRO on certain key issues. For example, testimony at the hearing to incur DIP financing indicated that Debtor's CRO Mr. McManigle never directly negotiated with the Bluetech Trust over the proposed $2 million DIP financing agreement; nor did Debtor's counsel make Mr. McManigle aware that the Bluetech Trust refused to submit to bankruptcy court's jurisdiction. 06/09/2020 Tr. 44:7-14. Debtor's counsel also objected to proofs of claim filed by the Consumer Borrowers even though Mr. McManigle admitted that neither he nor anyone with MACCO reviewed or analyzed them in the first place. *Id.* at 46:2-13. These findings raise the question as to who actually directed Debtor's counsel in connection with this case.

66.     Should the Court find that Debtor's counsel represented an interest adverse to Debtor's estate and creditors, then it should direct disgorgement of fees received back to the estate.

13

## Conclusion

In conclusion, the United States Trustee respectfully requests this Court 1) retain jurisdiction over Debtor's attorney's fees and 2) review Debtor's transactions with attorneys. The United States Trustee further requests any other relief to which he may be entitled.

DATED: July 2, 2020                    Respectfully submitted,

                                    WILLIAM T. NEARY
                                    UNITED STATES TRUSTEE

                                  /s/ Erin Marie Schmidt
                                  Erin Marie Schmidt
                                  Texas State Bar No. 24033042
                                  Office of the United States Trustee
                                  1100 Commerce Street, Room 976
                                  Dallas, Texas 75242
                                  (214) 767-1075
                                  Erin.Schmidt2@usdoj.gov

## Certificate of Service

I certify that I sent a copy of the foregoing document on July 2, 2020 on those parties entitled to receive notice via ECF.

                                                */s/ Erin Marie Schmidt*
                                                Erin Marie Schmidt